**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

ONEBEACON MIDWEST          :
INSURANCE COMPANY,         :
                           :
    Plaintiff,           :
                           :          CIVIL ACTION NO.
v.                         :          2:14-CV-00007-RWS
                           :
EDWARD D. ARIAIL, *et al.*, :
                           :
    Defendants.          :

## <u>ORDER</u>

This case comes before the Court on the FDIC-R's Motion to Dismiss for Lack of Subject Matter Jurisdiction [16], the FDIC-R's Motion to Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction [26], the Director and Officer Defendants' Motion to Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction [29], and Plaintiff's Motion for Leave to File Surreply and Request for Oral Argument [34].  After reviewing the record, the Court enters the following Order.

### Background

Plaintiff OneBeacon Midwest Insurance Company sold to the individually-named defendants and Habersham Bank a management and

professional liability policy for the claims-made policy period of August 31,

2007 through August 31, 2010, and extended reporting-period coverage of

August 31, 2010 to August 31, 2011.  (Am. Compl., [19] ¶¶ 18-19.)  The Policy

provides that "[OneBeacon] will pay on behalf of the Insured Persons, Loss for

which the Insured Persons are not indemnified by the Financial Institution and

for which the Insured Persons are legally obligated to pay for reason of Claims

first made during the Policy Period or the Extended Reporting Period, if

elected, against the Insured Person for Wrongful Acts."  (Insurance Policy, [26-

2] at 5.)   "Loss" is defined in the Policy as:

> any amount which the Insureds are legally obligated to pay resulting from
> a Claim, including damages, judgments, settlements, Defense Costs, pre-
> and post-judgment interest, punitive or exemplary damages and the
> multiple portion of any multiplied damage award . . . , where insurable by
> law.

(Id. at 12.)  "Loss" under the Policy does not include "any unpaid,

unrecoverable or outstanding loan, lease or extension of credit to any customer

or any forgiveness of debt; [or] . . . any restitution, disgorgement, return or

repayment of any sums."  (Id.)  These exceptions are referred to as the "unpaid

loan carve-out" and "restitution carve-out."  (Am. Compl., [19] ¶¶ 38, 48.)

2

The Policy also includes an "insured v. insured" exclusion:

> The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** by, on behalf of, or at the behest of any **Insured** in any capacity . . . .

(Insurance Policy, [26-2] at 18) (emphasis in original).  Pursuant to an exception to this exclusion, coverage is ensured for:

> [A] claim by a security holder of the **Financial Institution** as a derivative action on behalf of the **Financial Institution**; provided such **Claim** is brought independently of, and totally without solicitation, assistance, participation, or intervention of any **Insured**.

(Id.) (emphasis in original).

On February 18, 2011, the Georgia Department of Banking and Finance closed Habersham Bank and named the Federal Deposit Insurance Corporation as receiver for the bank (FDIC-R).  (Am. Compl., [19] ¶ 2.)  The FDIC-R succeeded to the rights, titles, powers, and privileges of the Bank, the Bank's stockholders, its account holders, and its depositors.  See 12 U.S.C. § 1821(d)(2)(A).  The FDIC-R also retained the authority to pursue claims against former bank directors and officers who may be personally liable for claims of negligence, gross negligence, and breach of fiduciary duty.  Id. § 1821(k).

3

After its appointment as receiver, the FDIC-R gave notice of the Bank's failure to potential creditors and claimants, including those shown on its books. (Am. Compl., [19] ¶ 2.)  Additionally, the FDIC-R published a notice of the Bank's failure once a month for three consecutive months and posted detailed information to the FDIC-R's website.  (Def.'s Mot. to Dismiss, [26] at 8.)  The notices stated that any creditor or claimant with a claim related to the Bank's assets had to file that claim with the FDIC-R as part of its administrative claims process on or before May 25, 2011, 90 days after publication of the notices. (Id.)

On February 24, 2011, the FDIC-R sent notice to OneBeacon of its appointment and specifically indicated that "[OneBeacon] may have a claim against the Failed Institution" and that "any claims against the failed Institution must be filed on or before May 25, 2011," the bar date.  (Id.) OneBeacon did not file any administrative claims by May 25, 2011.  (Id.)

Then, on August 28, 2011, the FDIC-R sent a letter alleging mismanagement of the Bank addressed to fifteen former directors and officers. (Am. Compl., [19] ¶ 28.)  The letter sought payment of damages for the directors and officers' alleged breach of duties owed to the Bank before the

4

FDIC-R took over.  (Id. ¶ 29.)  Nearly one year following the bar date, on May

9, 2012, OneBeacon filed a declaratory action against the FDIC-R and the

directors and officers seeking a declaration that coverage of the directors and

officers was precluded by the Policy's insured v. insured exclusion, as well as

by the unpaid-loan and restitutions carve-outs from its "Loss" definition.  See

OneBeacon Midwest Ins. Co. v. FDIC, No. 2:12-CV-0106-RWS (N.D. Ga.)

("OneBeacon I").  This Court dismissed the declaratory judgment action for

lack of subject matter jurisdiction, holding that the action was barred by Section

1821(j) of the Financial Institutions Reform, Recovery, and Enforcement Act of

1989 ("FIRREA").  See 2013 WL 1337193, at *4 (N.D. Ga. Mar. 28, 2013).

Under that provision, "no court may take any action, except at the request of the

Board of Directors by regulation or order, to restrain or affect the exercise of

powers or functions of the [FDIC] as a conservator or a receiver."  12 U.S.C. §

1821(j).  Because Plaintiff sought a preemptive determination of rights, the

Court found that the action would "affect the FDIC's ability to collect money

due to Habersham."  OneBeacon I, 2013 WL 1337193, at *4.

        The Court also noted that FIRREA did not deprive Plaintiff of a remedy

because FIRREA provides an administrative process for the resolution of

5

claims, including *de novo* district court review.  Id. at *5; see also 12 U.S.C. §

1821(d).  Thus, on May 13, 2013, about two years after the claims bar date,

OneBeacon submitted a proof-of-claim through the FDIC administrative claims

process.  (Am. Compl., [19] ¶ 3.)  On November 12, 2013, the FDIC-R denied

the claim as untimely.  (Id.)

On January 7, 2014, OneBeacon filed the instant action asserting that it

had provided proof of claim to the FDIC under the administrative claims

process but that its claim had been denied.  (Id. ¶ 19.)  The FDIC-R filed suit

against the directors and officers on February 14, 2014.  (Id. ¶ 58.)  The FDIC-

R moved to dismiss this action on June 26, 2014 for lack of subject matter

jurisdiction.  OneBeacon then filed an Amended Complaint on July 11, 2014,

adding that the Policy does not provide coverage for the lawsuit the FDIC-R

filed against the directors and officers on February 14, 2014.[1]  (Id.)  Plaintiff

also asserts that it timely filed its proof of claim. (Id. ¶ 15.)  Defendants now

move to dismiss this action for lack of subject matter jurisdiction, arguing that

---

[1]Because Plaintiff filed an Amended Complaint, the FDIC-R's first Motion to
Dismiss [16] is accordingly **DENIED as moot**.

judicial review is precluded because Plaintiff did not file its administrative

claim by the bar date.[2]

**Discussion**

I.     **Motion for Leave to File Surreply and Request for Oral Argument [34]**

As a preliminary matter, the Court addresses Plaintiff's request for leave

to file a surreply and for oral argument.  "Neither the Federal Rules of Civil

Procedure nor this Court's Local Rules authorize the filing of surreplies."

Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1197 (N.D. Ga.

2005) (internal citations omitted).  "To allow such surreplies as a regular

practice would put the court in the position of refereeing an endless volley of

briefs."  Garrison v. N.E. Ga. Med. Ctr., Inc., 66 F. Supp. 2d 1336, 1340 (N.D.

Ga. 1999) (declining to permit surreply).  Rather, surreplies typically will be

permitted by the Court only in unusual circumstances, such as where a movant

raises new arguments or facts in a reply brief, or where a party wishes to inform

the Court of a new decision or rule implicating the motion under review.  See,

e.g., Fedrick, 366 F. Supp. 2d at 1197 (stating that "valid reason for . . .

---

[2]In the directors and officers' Motion to Dismiss [29], they adopt the arguments the FDIC-R made in support of its motion.

additional briefing exists . . . where the movant raises new arguments in its reply brief").

Plaintiff moves for leave to file a surreply to respond to two arguments it contends Defendants raised for the first time in their reply brief: (1) that claimants receiving notice of the FDIC's appointment before the claims bar date must assert any potential or possible claims existing as of the date of the appointment of the receiver, and (2) even if Plaintiff's claim accrued after the bar date, Plaintiff waited too long to file its claim and the claim is still barred. (Pl.'s Br. [34] at 2-3.)  The first argument directly responds to Plaintiff's contention in its response brief that its claim did not accrue until after the bar date.  Defendants challenge Plaintiff's reasoning and insist Plaintiff's claim accrued for FIRREA purposes before the bar date.  And, for the reasons stated below, the Court need not consider the second argument.  Therefore, a surreply is not necessary.

Finally, after reviewing the briefs filed in this matter, the Court finds that oral argument is unnecessary.  Accordingly, Plaintiff's Motion for Leave to File Surreply and Request for Oral Argument [34] is **DENIED**.

8

## II.      Motion to Dismiss Legal Standard

When a party asserts lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) as grounds for dismissal, the court must accept well-pleaded facts in the complaint as true.  However, "[w]hen the determination of subject matter jurisdiction requires the Court to look at matters beyond the face of the complaint, the Court applies an analysis similar to the summary judgment standard."  U.S. v. Walker, 438 F. App'x 885, 887 (11th Cir. 2011) (citing Lawrence v. Dunbar, 919 F.2d 1526, 1530 (11th Cir. 1990)) (finding a Rule 56 summary judgment standard appropriate when ruling on a motion to dismiss asserting a factual attack on subject matter jurisdiction).

## III.     Analysis

Defendant moves to dismiss Plaintiff's claim for lack of subject matter jurisdiction due to Plaintiff's failure to exhaust administrative remedies under FIRREA.  In enacting FIRREA, Congress "sought to reduce the volume of formal litigation that otherwise would have resulted by providing for administrative review of such claims."  Stamm v. Paul, 121 F.3d 635, 639 (11th Cir. 1997).  Pursuant to § 1821 of FIRREA:

9

> [N]o court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).  Subsection (d) provides for *de novo* district court review of claims only when they have been exhausted through the FDIC's administrative claims process.  Id. § 1821(d)(13)(D); see also  Placida Prof'l Center, LLC v. FDIC, 512 F. App'x 938, 945 (11th Cir. 2013) (unpublished); McMillian v. FDIC, 81 F.3d 1041, 1045 (11th Cir.1996) ("The rule in this circuit is clear: FIRREA makes exhaustion of the FDIC's administrative complaint review process mandatory when the FDIC has been appointed receiver for a financial institution.")

The administrative claims process, however, is subject to strict timeliness requirements:

> (i) In general
>
> Except as provided in clause (ii), claims filed after the date

10

specified in the notice published under paragraph (3)(B)(i) shall be disallowed and such disallowance shall be final.

(ii) Certain exceptions

Clause (i) shall not apply with respect to any claim filed by any claimant after the date specified in the notice published under paragraph (3)(B)(i) and such claim may be considered by the receiver if—

(I) the claimant did not receive notice of the appointment of the receiver in time to file such a claim before such date; and

(II) such claim is filed in time to permit payment of such claim.

12 U.S.C. § 1821(d)(5)(C).  So, if a claimant files a claim after the bar date, the claim "shall be disallowed," and thus the claimant cannot exhaust its administrative remedies or pursue district court review.  In that regard, the Eleventh Circuit has held that timely filing a claim is a jurisdictional requirement under FIRREA. See Gomez v. Bank United, No. 10-21707-CIV, 2011 WL 114066, at *2 (S.D. Fla. Jan. 13, 2011) (citing Paul v. FDIC, 91 F.3d 110, 111 (11th Cir. 1996)); see also McMillian, 81 F.3d at 1045.

The only exception to the timeliness requirement is when "the claimant did not receive notice of the appointment of receiver in time to file such a claim before date."  12 U.S.C. §1821(d)(5)(C)(ii)(I); see also RPM Invs., Inc. v.

11

Resolution Trust Corp., 75 F.3d 618, 620 n.2 (11th Cir. 1996) ("The

'exceptions' to § 1821(j)'s jurisdictional bar are extremely limited.").  In

Stamm v. Paul, the Eleventh Circuit addressed this exception and accepted the

FDIC's interpretation of it, concluding that "in time to file such claim" means

"at a time when the claimant could have filed such a claim." 121 F.3d at 640.

Thus, if a party receives notice of the receivership's appointment and could file

its claim before the claims bar date, but fails to do so, then the claim is barred

under FIRREA's administrative scheme.  On the other hand, if a party receives

notice of the receivership, but at that time the claim does not yet exist, then the

claim is not barred.

Plaintiff argues that it could not have filed its claim before the claims bar

date because the claim did not exist until the FDIC-R made a demand against

the officers and directors in the August 2011 letter.  Instead, Plaintiff argues

that its claim falls within the exception to the bar date that permits the filing of

claims that accrue after the bar date.  See 12 U.S.C. § 1821(d)(5)(C)(ii); Carlyle

Towers Condo. Ass'n, Inc. v. FDIC, 170 F.3d 301, 306 (2d Cir. 1999) (noting

that if a claim first arises after the bar date, that claim is not automatically

barred even if the claimant had notice of the appointment of the receiver).

12

Defendants insist that Plaintiff's claim is untimely because Plaintiff was notified of the bar date but did not file anything by that deadline.

The key issue is therefore whether Plaintiff's claim against the FDIC-R accrued before or after the bar date.  In <u>Gomez v. Bank United</u>, the plaintiff asserted a claim against the FDIC to recover funds lost due to a former employee's conversion.  2011 WL 114066, at *5.  The plaintiff argued that the claim fell under FIRREA's § 1821(d)(5)(C) exception because the plaintiff did not discover the conversion until after the bar date and thus did not have notice in time to file the claim.  <u>Id.</u>  The court, however, found that under Florida law, the plaintiff's claim for conversion accrued "when the last element constituting the cause of action occur[red]," which, in the plaintiff's case, was before the claims bar date.  <u>Id.</u>  Furthermore, the delayed-discovery doctrine did not apply to her claim, so the Court found that the plaintiff could have timely filed the claim but failed to do so.  <u>Id.</u>  Even though Plaintiff did not know of the conversion before the bar date, the Court dismissed the case for lack of subject matter jurisdiction.  <u>Id.</u> at *6 (following the Eleventh Circuit, the court determined that "the exhaustion of administrative remedies [is] a prerequisite to

13

the district court's subject matter jurisdiction," and therefore, the court held it lacked subject matter jurisdiction to hear the case).

In Campbell v. FDIC, an insurance company surrendered to the FDIC the entire cash-value of an insurance policy in which both the trust and a failed bank had an interest. 676 F.3d 615, 617-18 (7th Cir. 2012). The trustee learned of the surrender two weeks before the claims bar date. Id. at 617. Later, the trustee wrote to the insurance company demanding return of the trust's interest in the policy; however, the insurance company did not respond until over a month after the claims bar date, stating that it was not liable for surrendering the policy to the FDIC. Id. The trustee then filed an administrative claim with the FDIC, which was denied for the trustee's failure to file his claim by the bar date. Id. The trustee then argued that he did not have notice of his claim before the bar date because he did not know he had a potential claim until the insurer refused to refund the policy to him well after the deadline. Id. at 618.

Still, the Seventh Circuit noted that the trustee learned of the surrender of the policy two weeks before the bar date, and "[a]t that point, the Trustee surely realized that the receiver's action adversely affected the Trust; the Trustee need not have believed that the FDIC was the only avenue for recovery in order to be

14

cognizant of a potential claim." <u>Id.</u>  Because the trustee had notice of a *potential* claim before the bar date, the court rejected his argument that his claim arose after the bar date.  <u>Id.</u>

The question presented is a close one. Plaintiff's argument that it should not be expected to submit a proof of claim to the FDIC before knowing the nature and objects of a claim by the FDIC-R has logical appeal. However, these cases illustrate that courts have been strict in interpreting the limited exception to FIRREA's timeliness requirement.  Here, although the FDIC-R did not assert its claims until after the bar date, the allegations against the directors and officers relate to conduct that occurred before the Bank was even in receivership.  An insurer surely would know that its insureds face potential claims by the FDIC-R (and thus some policy exclusions might apply) after a bank is put in receivership.  Like in <u>Campbell</u>, where the trustee was on notice the trust could be adversely affected when he learned the policy had been surrendered to the FDIC, here Plaintiff would have known that the Bank's failure and the appointment of a receiver could adversely affect it under the terms of the professional and management liability policy.  It is not a stretch to conclude that directors and officers could be liable for breaching certain duties

and that the FDIC-R would bring claims against them.  And as <u>Gomez</u> illustrates, if the cause of action accrued before the receiver is appointed, a court is still deprived of subject matter jurisdiction over late claims even if a claimant did not know the claim existed.  For that reason, Plaintiff did not have to wait for confirmation before engaging the administrative process.

Furthermore, the RTC's Interim Statement, cited with approval by the Eleventh Circuit in <u>Stamm v. Paul</u>, provides guidance on the administrative claims procedures for claims based on acts or omissions of the receiver "that were not in existence as of the date of the receiver's appointment."  Interim Statement of Policy Regarding Procedures to Be Used with Regard to Claims Based Upon Acts or Omissions of the Receiver, 59 Fed. Reg. 10663 (Mar. 7, 1994).  The statement provides that a "Post-Receivership Claim shall not include any claim in existence as of the date of the appointment of the receiver, regardless of whether the claim was then contingent, unliquidated, not matured or not known or discovered."  <u>Id.</u>  These guidelines further reinforce the Court's finding that Plaintiff could have taken its claim to the FDIC administrative process by the bar date even though the FDIC-R had not yet sought recovery from the directors and officers.  Once the Bank failed and the receiver was

16

appointed, Plaintiff had notice of the existence of potential claims by the FDIC-R against its insureds even if the claim was contingent or not known at that time.  See id.

For these reasons, the Court finds that Plaintiff had notice of the appointment of the receiver in time to file a proof-of-claim by the bar date. Because it did not, the Court lacks subject matter jurisdiction.  See Paul, 91 F.3d at 111 (finding that the "the only fact that would appear to confer subject matter jurisdiction on the district court is the fact that Paul's claim was timely filed"); Gomez, 2011 WL 114066, at *3 ("The plain language of an albeit complex statute suggests that in the case of time barred claims, no further review is permitted by either the administrative review board or a district court once the claim is determined to be untimely." (footnote omitted)).

## Conclusion

In accordance with the foregoing, the FDIC-R's Motion to Dismiss for Lack of Subject Matter Jurisdiction [16] is **DENIED as moot**; the FDIC-R's Motion to Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction [26] and the Director and Officer Defendants' Motion to Dismiss First Amended Complaint for Lack of Subject Matter Jurisdiction [29] are

**GRANTED**; and Plaintiff's Motion for Leave to File Surreply and Request for

Oral Argument [34] is **DENIED**.


     **SO ORDERED**, this __27th__ day of March, 2015.


                            _____
                            RICHARD W. STORY
                            UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)